**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| DUSTIN GRAMPS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CZAR MARKETING GROUP LLC, VACATION RESORTS CONSULTANTS LLC d/b/a ANY 3 NIGHTS, and RESORT SALES BY SPINNAKER, INC.,<br><br>Defendants. | Case No. 5:25-cv-00373-CEM-PRL<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff Dustin Gramps ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendants Czar Marketing Group LLC, Vacation Resorts Consultants LLC d/b/a Any 3 Nights, and Resort Sales by Spinnaker, Inc. ("Defendants") and, based upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and upon information and belief, supported by the investigation of counsel, as to all other matters, alleges as follows:

## NATURE OF THE ACTION

1. This putative class action arises out of Defendants' systematic and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et*

[1] Plaintiff hereby dismisses former Defendant Spinnaker Resorts, Inc. without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

*seq.*, and its implementing regulations adopted by the Federal Communications Commission ("FCC"), codified at 47 C.F.R. § 64.1200, *et seq.*, and Defendants' concurrent violations of the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. Through its enactment of the TCPA, Congress sought to protect consumers from intrusive and unwanted robocalls and text messages that invade privacy and disrupt daily life. *See Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023); *see also Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (noting TCPA's aim to curb "abusive telemarketing practices").

3. As alleged herein, Defendants engaged in a pattern of unlawful telemarketing by targeting Plaintiff and the proposed Class ("Class," defined below) with unsolicited telephone solicitations, causing widespread annoyance and harm, in violation of the TCPA and the FTSA including by:

a. using an automated system for the selection and dialing of telephone numbers in violation of Fla. Stat. § 501.059(8)(a);

b. failing to maintain the "minimum standards" for statutorily required "procedures for maintaining a list of persons who request not to receive such calls," pursuant to 47 C.F.R. § 64.1200(d); and

c. disregarding requests to not receive further solicitations in violation of Fla. Stat. § 501.059(5).

4. Through this action, Plaintiff seeks an award of actual and statutory damages and/or liquidated damages to Plaintiff and the Class to compensate for the

injuries inflicted by Defendants' misconduct, and injunctive relief to halt ongoing and future unlawful telemarketing practices in violation of the TCPA and FTSA.

## JURISDICTION AND VENUE

5. **Subject Matter Jurisdiction**. This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331, as those claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. This Court has supplemental subject matter jurisdiction over Plaintiff's FTSA claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as the TCPA claims and are so related that they form part of the same case or controversy.

6. **Personal Jurisdiction**. This Court has personal jurisdiction over Defendants because this action arises out of and relates to Defendants' purposeful contacts with this state through its initiation and/or direction of unlawful telemarketing to Plaintiff, who received such telemarketing while located in this state. Defendants purposefully availed themselves of the privilege of conducting business in this state by targeting consumers in this state with telemarketing activities, thereby establishing minimum contacts sufficient to support the exercise of personal jurisdiction.

7. **Venue**. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in this district, including Defendants' transmission of unlawful telemarketing to Plaintiff who was located in this district.

**PARTIES**

8. Plaintiff is a natural person and, at all relevant times, was a resident of Marion County, Florida.

9. Defendant Czar Marketing Group LLC ("Czar") is a legal entity that maintains its principal place of business at 7730 W. Sahara Ave., Ste. 105, Las Vegas, NV 89117.

10. Defendant Vacation Resorts Consultants LLC d/b/a Any 3 Nights ("VRC") is a legal entity that maintains its principal place of business at 7730 W. Sahara Ave., Ste 105, Las Vegas NV 89117.

11. Defendant Resort Sales by Spinnaker, Inc. ("Spinnaker") is a legal entity that maintains its principal place of business in Hilton Head County, South Carolina.

**TCPA BACKGROUND**

12. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, to curb the explosive growth of abusive telemarketing practices that invade consumer privacy and disrupt daily life. Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy," particularly through automated technologies like robocalls and text messages. Pub. L. No. 102-243, § 2(5) (1991). The TCPA targets unwanted calls and text messages, such as those alleged herein, to protect consumers from unsolicited intrusions. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (noting TCPA's

response to "voluminous consumer complaints about abuses of telephone technology").

13. The TCPA applies equally to unsolicited text messages, which cause identical privacy harms as calls. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]"); *Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023) ((Through its enactment of the TCPA, Congress "targeted unwanted text messages (as well as unwanted phone messages)."). Violations of the TCPA cause concrete harm like invasion of privacy and annoyance, which Congress deemed actionable without additional injury. *See Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("[W]e hold that the receipt of an unwanted text message causes a concrete injury[.]"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing *Spokeo*, 578 U.S. at 341).

14. The TCPA prohibits initiating any call, other than for emergency purposes or with prior express consent, using an ATDS or an artificial or prerecorded voice to a cellular telephone number. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). An ATDS is defined as equipment with the capacity to store or produce numbers using a random or sequential number generator and dial them. 47 U.S.C. § 227(a)(1); *see Facebook, Inc. v. Duguid*, 592 U.S. 395, 405 (2021). The TCPA also restricts telemarketing calls to residential subscribers before 8 a.m. or after 9 p.m., local time, and to residential subscribers whose phone numbers are registered on the National DNC, without prior express invitation or permission, and makes such claims

actionable after more than one call in a 12-month period. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA further mandates that telemarketers maintain procedures for honoring do-not-call requests, including a written policy and training, with violations actionable if two or more telephone solicitations are made after a request to stop. 47 C.F.R. § 64.1200(d); 47 U.S.C. § 227(c)(5). Cellular numbers registered on the DNC are presumed residential. *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14039 (2003).

15. Telemarketing calls require prior express written consent, defined as "an agreement, in writing, that bears the signature of the person called or texted that clearly and conspicuously authorizes no more than one identified seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice." 47 C.F.R. § 64.1200(f)(9). A called party may revoke prior express consent to receive calls or text messages by using "any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender." 47 C.F.R. § 64.1200(a)(10).

16. An entity can be vicariously liable under the TCPA for a call made on its behalf. Under those circumstances, the entity is deemed to have initiated the call through the person or entity. In a 2008 Declaratory Ruling, the FCC stated that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory*

*Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014) ("The 2008 FCC Ruling thus has the force of law[.]").

17. The FCC has also made clear that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

18. The TCPA provides statutory damages of $500 per violation, trebled to $1,500 for willful or knowing violations, and injunctive relief to halt ongoing misconduct. 47 U.S.C. § 227(b)(3), (c)(5).

**FTSA BACKGROUND**

19. The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, complements the TCPA by protecting Florida residents from intrusive telemarketing calls and text messages that solicit consumer goods or services. The FTSA aims to safeguard privacy and prevent harassment through unsolicited "telephonic sales calls," defined as calls, texts, or voicemails, for selling, extending credit, or gathering information for such purposes. Fla. Stat. § 501.059(1)(j). The FTSA applies to

telemarketers that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida.

20. The FTSA prohibits unsolicited telephonic sales calls and texts using an automated system for number selection or dialing, or a recorded message, without prior express written consent. Fla. Stat. § 501.059(8)(a). The FTSA defines "prior express written consent" as follows:

> (g) "Prior express written consent" means a written agreement that:
>
> 1. Bears the signature of the called party;
>
> 2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;
>
> 3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and
>
> 4. Includes a clear and conspicuous disclosure informing the called party that:
>
> a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and
>
> b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

21. The FTSA also bars telephonic sales calls to numbers on the Florida DNC, maintained by the Department of Agriculture and Consumer Services, without consent. Fla. Stat. § 501.059(4). Additionally, telemarketers must honor requests to stop calls, with violations actionable after continued calls or texts. Fla. Stat. § 501.059(5).

22. The FTSA also mandates that telephonic sales calls and text messages display a valid telephone number capable of receiving calls, connecting to the solicitor or seller's customer service during business hours. Fla. Stat. § 501.059(8)(b). This applies to all telephonic sales calls, regardless of consent, ensuring transparency and accountability. Violations occur when displayed numbers are non-functional or fail to connect, causing harm like confusion and inability to opt out.

23. The FTSA expressly applies to a "telephone call, text message, or voicemail." Fla. Stat. § 501.059(1)(j). For violations based on text messages, the FTSA requires that the plaintiff replied "STOP" and received further texts as a prerequisite to bringing a claim for "damages," but a claim for injunctive relief is available, even without a "stop" request having been made. Fla. Stat. § 501.059(10)(c).

24. The FTSA provides liquidated damages of $500 per violation, trebled to $1,500 for willful or knowing violations, injunctive relief, and reasonable attorney's fees. Fla. Stat. § 501.059(10), (11)(a).

## FACTUAL ALLEGATIONS

25. At all relevant times Plaintiff was a residential subscriber and primary user of a cellular telephone number ending in 0808.

26. This is Plaintiff's personal phone line that is used as Plaintiff's residential phone line and is the primary means for friends and family to reach Plaintiff at home.

27. This number is not associated with any business and has never been held out by Plaintiff to the public as business phone number.

28. Plaintiff does not maintain, and is not a subscriber to, any other phone line.

29. Plaintiff never gave prior express written consent, or prior express permission or invitation to receive telephone solicitations from Defendant.

30. Plaintiff did not transact business with Defendants within 18 months of receiving Defendants' telephone solicitations.

31. Plaintiff did not make an inquiry regarding Defendants' products or services within three months of receiving Defendants' telephone solicitations.

32. The remaining Defendants initiated or caused to be initiated numerous unlawful telephone solicitations to Plaintiff's telephone number in violation of the TCPA and the FTSA for the benefit of Resort Sales by Spinnaker, Inc.

33. Specifically, beginning in 2024, Plaintiff began being inundated with relentless telemarketing calls from companies identifying themselves as "VRC Getaways", "Any 3 Nights," "Spinnaker Resorts," and "Choice Travel".

34. Below are non-exhaustive examples of some of these unlawful telephone solicitations that Defendants initiated to Plaintiff, and upon information and belief, Plaintiff alleges that discovery will identify additional unlawful communications to

Plaintiff's phone that were initiated by Defendants or on their behalf within the last four years.

- A call on August 19, 2024, from 352-608-5812
- A call on August 19, 2024, from 352-608-5812;
- A call on August 26, 2024, from 352-654-1627;
- A call on August 27, 2024, from 239-663-4453;
- A call on September 09, 2024, from 352-469-9463;
- A call on September 09, 2024, from 352-574-8074;
- A call on September 09, 2024, from 352-774-4583; and
- A call on September 09, 2024, from 352-695-7056;
- A call on September 16, 2024, from 239-832-9129; and
- A call on September 16, 2024, from 239-832-9129.

35. Each solicitation was sent for the purpose of promoting or encouraging the purchase of Defendants' goods or services related to time shares.

36. On each call, Plaintiff requested to not receive further telephone solicitations from Defendants or on Defendants' behalf.

37. Based upon information and belief, Defendants maintain records of these interactions.

38. Despite Plaintiff's stop requests, Defendants continued to initiate unsolicited telemarketing solicitations to Plaintiff's phone.

39. Given the capabilities of modern telemarketing technology Defendants have the ability to immediately comply with do-not-call requests.

40. By failing to immediately record and honor Plaintiff's do-not-call request and continuing to initiate telemarketing telephone solicitations after that request, Defendants failed to honor Plaintiff's do-not-call request "within a reasonable time." *See Lourie v. Papa John's Int'l, Inc.*, No. 1:23-CV-4320-MHC, 2024 U.S. Dist. LEXIS 119679, at *9-10 (N.D. Ga. June 25, 2024) ("Because the Court must accept as true [plaintiff's] allegation that 'Defendant has the capability of immediately complying with Plaintiff's [do-not-call] request,' at this stage of the dispute, the Court must infer that Defendant could have immediately complied with the request prior to the transmittal of the two telemarketing text messages in the week following Lourie's request.") (internal citations omitted).

41. By failing to honor Plaintiff's do-not-call request within a reasonable time, Defendants violated the TCPA's "minimum standards" for maintaining a do-not-call list (47 C.F.R. § 64.1200(d), as well as the FTSA's requirement that a telephone solicitor or other person must honor consumer requests to not receive further calls (Fla. Stat. § 501.059(5)).

42. Defendants' failure to honor Plaintiff's do-not-call requests strongly suggests that Defendants also do not meet the other "minimum standards" for the "procedures for maintaining a list of persons who request not to receive" that telemarketers must maintain, such as (1) a written policy for maintaining an internal do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1); (2) informing and training its

personnel engaged in telemarking on the existence and use of any internal do-not-call list, as required by Section 64.1200(d)(2); (3) "record[ing] the request and plac[ing] the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made," as required by Section 64.1200(d)(3); and (4) maintain a record of a consumer's request not to receive further calls, as required by Section 64.1200(d)(6).

43. Indeed, it is implausible that Plaintiff would have continued receiving solicitations after a do-not-call request if Defendants maintained these procedures, as they were required to.

44. On or about September 9, 2024, Plaintiff retained counsel who mailed a pre-violation notice letter to Defendant VRC.

45. Counsel for defendant VRC confirmed that at least some of the calls at issue were placed by Defendant VRC and/or Defendant Czar.

46. Based upon the investigation of counsel, Defendants VRC and Czar share the same office address.

47. Based upon the investigation of counsel, "Any 3 Nights" is a "doing business name" for Defendant VRC. The office address of Defendants' VRC and Czar is shown on the internet as the office address for "Any 3 Nights."

48. Upon information and belief, "Choice Travel" is also a "doing business name" for Defendant VRC.

49. Those entities make calls on behalf of Resort Sales by Spinnaker.

50. Indeed on both the August 26, 2024, call from 352-654-1627, and on the August 27, 2024, call from 239-663-4453, the caller identified themselves to Plaintiff as calling on behalf of "Choice Travel." But when plaintiff called back those numbers, the person who answered the call answered on behalf of "Any 3 Nights."

51. Based upon the investigation of counsel, Defendant Czar also places telemarketing calls on behalf of Defendant Spinnaker. *See Dudas V. Resort Sales by Spinnaker, Inc.,* No. 2:20-cv-6008 (S.D. Ohio), First Amended Complaint, ECF No. 32.

52. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 F.C.C. Rcd 12391, 12397 (¶ 13) (1995).

53. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

54. Resort Sales by Spinnaker, Inc. maintained interim control over the actions of the parties that made the call.

55. For example, Resort Sales by Spinnaker, Inc. gave interim instructions to these entities because it provides its calling entities with (a) scripts to use, (b) the dates

and times they could make the calls (c) and instructions on how to consummate a sale to an interested consumer.

56. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

57. Defendants' unlawful telephone solicitations caused Plaintiff and the Class members concrete injury and actual damages, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, consumption of their phone battery and/or data, violation of their statutory privacy rights, and disruption to their personal and daily life as Plaintiff received the unlawful telephone solicitations at inconvenient times, causing Plaintiff to stop to check their phone to confirm the telephone solicitations were not for an emergency purpose, and because Plaintiff was forced to spend time investigating the source of the telephone solicitations and seeking out legal counsel to stop Defendants' harassing solicitations.

58. Based upon information and belief, Defendants maintain and/or have access to outbound and inbound transmission reports for all telephone solicitations sent for the purpose of encouraging or promoting the sale of its goods and services,

which show the dates, times, target telephone numbers, and content of each telephone solicitation made to Plaintiff and the Class members.

## CLASS ALLEGATIONS

59. Plaintiff brings this action individually and as a class action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the following proposed Classes:

> **TCPA Internal DNC Class**: All persons in the United States who, during the period beginning four years prior to the filing of this action and the date of class certification, (1) received two or more telephone calls in any 12-month period (2) from Defendants or on their behalf (3) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, (4) after making a request to not receive telephone calls from Defendants or on their behalf.
>
> **FTSA Autodialer Class:** All persons in the State of Florida who, during the period beginning on July 1, 2021, and the date of class certification, (1) received a telephone call (2) from Defendants or on their behalf (3) regarding Defendants' property, goods, and/or services (4) that was sent using the same equipment or type of equipment used to call Plaintiff, (5) and from whom Defendants do not possess evidence of prior express written consent to such calls.
>
> **FTSA Internal DNC Class:** All persons in the State of Florida who, during the period beginning on July 1, 2021, and the date of class certification, (1) received a telephone call (2) from Defendants or on their behalf (3) regarding Defendants' property, goods, and/or services (4) after they communicated that they do not wish to receive an outbound telephone call made by or on behalf of Defendants.

60. The Classes defined above are referred to herein individually or collectively as the "Class."

61. Plaintiff reserves the right to expand or narrow the Class definitions following discovery.

62. Excluded from the Class are Defendants and their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

63. ***Numerosity***. The members of the Class are so numerous that individual joinder is impracticable. Although the exact number of Class members is unknown, Plaintiff alleges upon information and belief that each Class includes at least 40 members based on the nature and objective of telemarketing campaigns, which are designed to reach a large volume of potential customers (called "leads" in the industry), in order to convert a small percentage of those leads into actual customers to ultimately drive increased sales to the company that engage in telemarketing. Class members are ascertainable through objective criteria, such as Defendants' call and text records, which Defendants maintain, allowing identification through discovery.

64. ***Common questions of law and fact predominate.*** There are numerous questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

a. Whether Defendants used an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA to initiate the telephone solicitations at issue;

b. Whether Defendants failed to maintain the "minimum standards" for statutorily required "procedures for maintaining a list of persons who request not to receive such calls" pursuant to 47 C.F.R. § 64.1200(d);

c. Whether Defendants disregarded requests to not receive further solicitations;

d. Whether Defendants' solicitations introduced an advertisement;

e. Whether Defendants' solicitations constitute "telephone solicitations" and/or "telemarketing" under the TCPA;

f. Whether Defendants' solicitations constitute "telephonic sales calls" under the FTSA;

g. Whether Defendants' conduct was knowing and/or willful;

h. Whether Plaintiff and the Class are entitled to statutory damages and/or liquidated damages and the amount of such damages; and

i. Whether Defendants should be enjoined from further violations of law as alleged herein.

65. ***Typicality***. Plaintiff's claims are typical of the Class members' claims under Fed. R. Civ. P. 23(a)(3) because they arise from the same course of conduct by Defendants and are based on the same legal theories. Plaintiff and Class members suffered similar harms, and Plaintiff is not subject to unique defenses.

66. ***Adequacy of representation***. Plaintiff will fairly and adequately protect the Class's interests under Fed. R. Civ. P. 23(a)(4). Plaintiff has retained counsel

experienced in complex consumer class actions and TCPA litigation and intends to vigorously prosecute this action. Plaintiff has no interests antagonistic to the Class.

67. ***Superiority***. A class action is superior to other methods for fairly and efficiently adjudicating this controversy under Fed. R. Civ. P. 23(b)(3). Individual litigation is economically infeasible due to the high costs relative to individual, making separate lawsuits impractical. Class treatment avoids burdening the court system with numerous individual cases and prevents inconsistent rulings or standards for Defendant. For example, one court might enjoin Defendants' conduct while another might not, creating conflicting obligations. Class members are unlikely to pursue individual claims due to the modest damages relative to litigation costs.

68. In addition to satisfying the prerequisites of Fed. R. Civ. P. 23(a), Plaintiff satisfy the requirements for maintaining a class action under Fed. R. Civ. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendants have acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

d. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CAUSES OF ACTION

## COUNT 1

### Violation of the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) (On Behalf of Plaintiff and the TCPA Internal DNC Class)

69. Plaintiff incorporates by reference and realleges the allegations in the paragraphs above as though fully set forth herein.

70. The TCPA's implementing regulations adopted by the FCC prohibit telemarketers from initiating any call for telemarketing purposes unless they institute certain procedures to ensure do-not-call requests are honored:

> No person or entity shall ***initiate…any call for telemarketing purposes*** to a residential telephone subscriber ***unless*** such person or entity has ***instituted procedures for maintaining a list of persons who request not to receive such calls*** made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d) (emphasis added).

71. Section 64.1200(d) requires that "[t]he procedures instituted ***must meet*** the following ***minimum standards***:"

> (1) ***Written policy***. Persons or entities making…calls for telemarketing purposes ***must have a written policy***, ***available upon demand***, for maintaining a do-not-call list.
>
> (2) ***Training of personnel***. Personnel…engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) ***Recording, disclosure of do-not-call requests***. If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity ***must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list*** at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) ***must honor a residential subscriber's do-not-call request within a reasonable time*** from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> * * *
>
> (6) ***Maintenance of do-not-call lists.*** A person or entity making…any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(1)-(6) (emphasis added).

72. A violation of Section 64.1200(d) is actionable through 47 U.S.C. § 227(c)(5), which grants a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(d)]." 47 U.S.C. § 227(c)(5).

73. As alleged herein, Defendant—or third-parties acting on Defendants' behalf—initiated, or caused to be initiated on its behalf, more than one telephone solicitation in a 12-month period to Plaintiff and the Class members without instituting the "minimum standards" for "procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."

74. Specifically, Defendants placed two or more telephone solicitations for telemarketing purposes to Plaintiff and the Class on their residential line.

75. Defendants' telephone solicitations to Plaintiff and the Class constitute "telemarketing" under the TCPA because they were initiated "for the purpose of encouraging the purchase or rental of…property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(13).

76. When Plaintiff and the Class received telemarketing telephone solicitations from Defendants or on their behalf, they made "do-not-call" requests.

77. Defendants failed to "honor [Plaintiff's and the Class members'] do-not-call request within a reasonable time" and continued initiate telemarketing telephone solicitations to Plaintiff and the Class.

78. By failing to "honor a residential subscriber's do-not-call request within a reasonable time," Defendants failed to meet the required "minimum standard" of Section 64.1200(d)(3).

79. Defendants' failure to honor Plaintiff's repeated do-not-call requests also strongly suggests that Defendants also do not meet the other "minimum standards" for the required "procedures for maintaining a list of persons who request not to receive" telemarketing.

80. Because Defendants do not meet the "minimum standards" of Section 64.1200(d), Defendants violated Section 64.1200(d) every time they "initiate[d] ***any call*** for telemarketing purposes," regardless of whether the recipient made a do-not-call request. 47 C.F.R. § 64.1200(d) (emphasis added).

81. As a result of Defendants' violations of the TCPA, Plaintiff and the Class members were harmed.

82. Plaintiff and the Class members are entitled to injunctive relief to stop Defendants' ongoing and future violations of the TCPA. *See* 47 U.S.C. § 227(c)(5)(A).

83. Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each call or text that Defendants placed in violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(B).

84. Because Defendants knew or should have known that they were initiating calls for telemarketing purposes without instituting the "minimum standards" for the "procedures for maintaining a list of persons who request not to receive such calls"

required by Section 64.1200(d), Defendants' violations of the TCPA were willful or knowing.

85. Thus, Plaintiff and the Class members are entitled to an award of treble statutory damages of $1,500.00 for each call or text that Defendants placed in knowing or willful violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(C).

**COUNT 2**

**Violation of the FTSA, Fla. Stat. § 501.059(8)(a)**
**(On Behalf of Plaintiff and the FTSA Autodialer Class)**

86. Plaintiff incorporates by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Count, as though fully set forth herein.

87. The FTSA prohibits a person from "mak[ing] or knowingly allow[ing] to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers…without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

88. As alleged herein, Defendants—or third-parties acting on Defendants' behalf—made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers.

89. Defendants' telephone solicitations to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(1)(j).

90. As Defendants' telephone solicitations to Plaintiff and the Class constitute "unsolicited telephonic sales calls" under the FTSA because they were not made (i) in response to an express request of the person called; or (ii) to a person with whom the telephone solicitor has a prior or existing business relationship. Fla. Stat. § 501.059(1)(k)

91. Defendants did not obtain "prior express written consent" to place unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers, as required by Section 501.059(8)(a).

92. Defendants initiated the telephonic sales calls at issue to Plaintiff and the Class members who were located in Florida.

93. Thus, Defendants' unsolicited telephonic sales calls to Plaintiff and the Class violated the Section 501.059(8)(a) of the FTSA.

94. Plaintiff and the Class members were harmed and aggrieved by Defendants' violations of the FTSA.

95. Plaintiff and the Class are entitled to injunctive relief to stop Defendants' ongoing and future violations of the FTSA. See Fla. Stat. § 501.059(10)(a)(1).

96. Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each unsolicited telephonic sales call that Defendants placed in violation of the FTSA. See Fla. Stat. § 501.059(10)(a)(2).

97. Because Defendants knew or should have known that they were using an automated system for the selection and dialing of telephone numbers to place

unsolicited telephonic sales calls to Plaintiff and the Class without prior express written consent, Defendants' violations of the FTSA were willful or knowing.

98. Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each unsolicited telephonic sales call that Defendants placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

99. Under Fla. Stat. § 501.059(11)(a), Plaintiff and the Class are entitled to an award of reasonable attorneys' fees and costs to be paid by the Defendant.

## COUNT 3

### Violations of the FTSA, Fla. Stat. § 501.059(5)
### (On Behalf of Plaintiff and the FTSA Internal DNC Class)

100. Plaintiff incorporates by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Counts, as though fully set forth herein.

101. It is a violation of the FTSA for a "telephone solicitor or other person" to "initiate an outbound telephone call, text message, or voicemail transmission to a consumer…who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission…made by or on behalf of the seller whose goods or services are being offered[.]" Fla. Stat. § 501.059(5).

102. Defendants are, and at all times relevant were, each a person and/or a "telephone solicitor" as defined by Fla. Stat. § 501.059(1)(i).

103. Defendant—or third-parties acting on Defendants' behalf—initiated outbound telephone solicitations to Plaintiff and the Class.

104. Plaintiff and the Class members communicated to Defendants that they do not wish to receive outbound telephone solicitations made by or on behalf of Defendant.

105. Defendants continued to initiate outbound telephone solicitations to Plaintiff and the Class after they made a request to not receive any.

106. Defendants initiated the telephonic sales calls at issue to Plaintiff and the Class members who were located in Florida.

107. Thus, Defendants violated Section 501.059(5) of the FTSA.

108. Plaintiff and the Class members were harmed and aggrieved by Defendants' violations of the FTSA.

109. Plaintiff and the members of the Class are entitled to injunctive relief to stop Defendants' ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

110. Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each unsolicited telephonic sales call that Defendants placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

111. Because Defendants knew or should have known that they were initiating telephonic sales calls to consumers who has previously communicated that they do not wish to receive them, Defendants' violations of the FTSA were willful or knowing.

112. Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each unsolicited telephonic sales call that Defendants placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

113. Under Fla. Stat. § 501.059(11)(a), Plaintiff and the Class are entitled to an award of reasonable attorneys' fees and costs to be paid by the Defendant.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendants take affirmative steps to preserve all records, lists, electronic databases, call logs, text message records, or other itemizations associated with the allegations herein, including those in the possession of any vendors, individuals, or companies contracted, hired, or directed by Defendants to assist in initiating the alleged unlawful solicitations. This includes but is not limited to records identifying telephone numbers contacted, dates and times of the solicitations, consent documentation, and do-not-call requests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for the following relief:

A. An order certifying the Class, appointing Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

B. An award to Plaintiff and each Class member of actual damages;

C. An award to Plaintiff and each Class member of statutory damages of $500 per violation of the TCPA, trebled to $1,500 for knowing or willful violations;

D. An award to Plaintiff and each Class member of liquidated damages of $500 per violation of the FTSA, trebled to $1,500 for knowing or willful violations;

E. An injunction prohibiting Defendants from further violations of the TCPA and the FTSA;

F. An award to Plaintiff and the Class of their reasonable attorney's fees as available under the law;

G. An award to Plaintiff and the Class of their costs of this action as available under the law;

H. An award to Plaintiff and the Class of post-judgment interest as available under the law; and

I. Any such further and other relief as the Court deems just and equitable.

Dated: October 8, 2025

Respectfully submitted,

*/s/ Christopher Gold*

Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, PA**
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

*Counsel for Plaintiff and the Proposed Class*