UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DUSTIN GRAMPS, individually and on
behalf of all others similarly situated;

      Plaintiff,

      v.                                Case No.: 5:25-cv-00373-CEM-PRL

CZAR MARKETING GROUP LLC, et
al.,

      Defendants,

                                      /

## ORDER

On behalf of himself and a class of persons similarly situated, Plaintiff Dustin Gramps filed a putative class action complaint against Defendants Czar Marketing Group, LLC, Vacation Resorts Consultants, LLC d/b/a Any3Nights, and Resort Sales by Spinnaker, Inc., alleging violations of the Telephone Consumer Protection Act ("TCPA) and the Florida Telephone Solicitation Act ("FTSA"). (Doc. 1).[1] Plaintiff claims that he received "relentless telemarketing calls" beginning in 2024 from entities identifying themselves as "VRC Getaways," "Any 3 Nights," and Spinnaker.

This matter is before the Court on a cluster of motions, all of which turn on the parties' ongoing discovery disputes. Specifically, Plaintiff has filed a renewed motion to compel discovery responses (Doc. 48) and a motion to extend the scheduling order and extend the class certification deadline. (Doc. 49). Spinnaker Resorts, Inc. (although no longer a named Defendant) has filed a motion to quash a subpoena and seeks a protective order as to three

---

[1] While the initial Complaint named Spinnaker Resorts, Inc. as a Defendant, the First Amended Complaint named Resort Sales by Spinnaker, Inc.

depositions. (Doc. 51). All three motions are fully briefed and ripe for consideration. (Docs. 53, 55, 56).

### I.    Background

This lawsuit arises from alleged telemarketing solicitations received by Plaintiff from Defendants. Beginning in September 2024, Plaintiff's counsel, Chris Gold, sought to resolve this matter through informal pre-suit negotiation with Defendants' pre-litigation counsel, Dino Tsibouris, Esq. Mr. Tsibouris advised Mr. Gold that his client had confirmed that their records show that one outbound call was made to Plaintiff, and that Plaintiff was then placed on the DNC list at his request. (Doc. 48-1 at 110). On December 27, 2024, Mr. Tsibouris produced "the query on [his clients'] call system"—i.e., the Original Search printout. (Doc. 48-1 at 155). It reflected a search from August 1, 2024 to September 30, 2024, and showed one outbound call by Defendant Czar Marketing Group, LLC to Plaintiff on September 9, 2024.

After the pre-suit negotiations failed, Plaintiff initiated this action asserting three claims: (1) a TCPA claim under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) for telemarketing calls placed without the statutorily required internal do-not-call procedures; (2) an FTSA claim under Fla. Stat. § 501.059(8)(a) for unsolicited telephonic sales calls placed using an automated system for the selection and dialing of telephone numbers; and (3) an FTSA claim under Fla Stat. § 501.059(5) for continuing to place telephonic sales calls after Plaintiff and the class communicated do-not-call requests. (Doc. 31).

On October 13, 2025, Plaintiff promulgated his First Set of Interrogatories and First Requests for Production to Defendants. Defendants served responses on December 1, 2025. Despite ongoing conversations over the course of the past eight months, and defense counsel

providing some limited additional (but unverified) information, Defendants have failed to supplement their discovery responses. Accordingly, on May 30, 2026, Plaintiff filed his initial motion to compel Defendants' discovery responses. (Doc. 45). The Court denied Plaintiff's initial motion without prejudice because it was unclear whether Plaintiff's counsel had conferred in good faith with defense counsel to resolve the discovery disputes as required by Local Rule 3.01(g). (Doc. 47).

Plaintiff has now filed a renewed motion to compel, setting forth counsels' ongoing discussions regarding the outstanding discovery. (Doc. 48). On July 6, 2026, counsel met and conferred regarding the outstanding discovery requests. Plaintiff's counsel sent an email to defense counsel recapping their discussion, including that:

1. Czar Marketing Group, LLC would produce its CRM search results showing all inbound and outbound calls to and from Plaintiff for the period beginning four years before the filing of the Complaint through the present, without the search-parameter date limitations visible in the screenshot previously provided. Defense counsel would determine the CRM search capability of Resort Sales by Spinnaker, Inc. and Vacation Resorts Consultants, LLC. Defense counsel would provide the same search result for each entity, or confirm what is available by the end of the week.
2. Defendants would not produce any class discovery absent a court order.
3. With respect to the contracts among the three Defendants concerning calling activity (RFP Nos. 8-12), defense counsel would review and respond by the end of the week, with production anticipated subject to a confidentiality agreement. On indemnification agreements (RFP No. 14), defense counsel advised that any such terms would presumably appear in contracts and agreed to verify any separate written indemnification agreements exist.
4. Defense counsel agreed to produce communications regarding Plaintiff; agreed to follow up on scope of the request regarding TCPA compliance; and agreed to produce documents showing how Defendants obtained Plaintiff's telephone number.

(Doc. 48-1 at 84). The email confirmed that defense counsel would provide responses (as discussed above) by July 10, 2026.

Defendants, however, failed to provide responses as promised and when Plaintiff's counsel followed up, defense counsel responded that "we did not get this pulled together," but "I think we can find a path to get this information to you very promptly." (Doc. 48-1 at 79-81).

On July 12, 2026, Plaintiff's counsel emailed defense counsel advising that a renewed motion to compel would be filed after the close of business on July 13, 2026 if he did not receive a written commitment by that time to produce by no later than July 17, 2026, without extension (1) the complete records of all inbound and outbound calls to and from Plaintiff during the full four-year statutory period, without date-parameter restrictions; (2) the contracts among the three Defendants concerning calling activity; and (3) documents showing how Defendants obtained Plaintiff's telephone number. (Doc. 48-1 at 79-80).

On July 13, 2026, counsel spoke again regarding the outstanding discovery issues. Plaintiff's counsel provided a recap of the discussion via email to defense counsel stating:

1. Defendants will supplement this week on the following three items: (a) complete, unfiltered CRM search results from each Defendant—and any other CRM any Defendant uses—showing all inbound and outbound calls to and from Plaintiff for the full four-year period preceding the filing of the Complaint, with the date restrictions and single phone number filter visible to confirm that the search captures all telephone numbers Defendants used to place calls; (b) the contracts among the Defendants laying out each entity's responsibilities concerning the calling activity, including any agreement between Czar and Spinnaker; and (c) documents showing how Defendants obtained Plaintiff's telephone number, including materials relating to the prior timeshare purchase.
2. Counsel agreed that by July 17, 2026, each item at issue would either be produced or Defendants would confirm in writing that they are standing on their objections.

(Doc. 48-1 at 164).

Then, on July 16, 2026, via email, defense counsel produced the "search from Czar that shows the date back to June, 2021." (Doc. 48-1 at 78, 155). Defense counsel also advised

that "it is my understanding" that the agreements between the parties were not in writing. (Doc. 48-1 at 78).

Plaintiff's counsel immediately took issue with the newly produced CRM printout, which purported to reflect a search from June 2021 through July 2026. Plaintiff's counsel noted that in comparing the two documents,

> they appear to be substantially identical in nearly every respect, including not only the overall interface, but also the same visible lead records, the same timestamps within those records, the same sorting and filter indicators, the same scrollbar position, the same desktop environment, and even what appears to be the same Windows taskbar showing the identical date, time, weather widget, and open applications as the prior production. The only readily apparent differences appear to be the date-range fields and the removal of the record-count line.

(Doc. 48-1 at 75-76).

Plaintiff's counsel then asked for clarification from Defendants regarding the following:

1. Was the July 16 document generated directly from the CRM system, or was it created or modified in some other manner?
2. If it was generated from the CRM, can you explain why it appears visually identical to the earlier production aside from the date fields and record-count line?
3. Was a new search actually run, and if so, was a new screenshot captured directly from the CRM?
4. Who created the July 16 document?
5. Is there a native export, report, or other electronically stored information reflecting the underlying search that can be produced?
6. Are there any audit logs, metadata, or other records showing when the search was run, by whom, and using what search parameters?

(Doc. 48-1 at 76).

In response, defense counsel stated that it was her understanding that the search was "directly from their CRM and the change was to reflect a search for a longer time period."

Defense counsel also advised that Plaintiff's phone number was obtained when he made a travel purchase in 2018, but the company no longer has that record. (Doc. 48-1 at 69-70, 75).

Accordingly, Plaintiff filed the instant renewed motion to compel, asking the Court to compel each Defendant to serve complete responses to numerous disputed Interrogatories and Requests for Production, and to produce all responsive documents. In addition, Plaintiff asks the Court to order Defendants to produce their complete, unrestricted dialer search results for the class period, and set an evidentiary hearing or order Defendants to show cause regarding the completeness of their dialer-record production; and award attorney's fees.

Plaintiff also served three Notices of Taking Deposition Duces Tecum to be taken on August 12 and August 13, 2026 (Doc. 51, Exhibits A-C), which Spinnaker Resorts, Inc. has moved to quash or alternatively has sought a protective order. (Doc. 51). And finally, because of the ongoing discovery disputes, Plaintiff has filed a motion to extend the deadline for filing Plaintiff's motion for class certification. (Doc. 49).

## II.    Discussion

This putative class action is in the pre-class certification stage. As an initial matter, the parties disagree about the proper scope of discovery. Defendants contend that class discovery should not be permitted at this stage because Plaintiff does not have successful individual claims against Defendants, and thus, cannot be a class representative.

District courts have "broad discretion over the management of pre-trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.,* 263 F.3d 1234, 1269 (11th Cir. 2001). Courts have discretion to bifurcate individual discovery and class discovery in class action cases, including those claiming TCPA violations. *See Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1570–71 (11th Cir. 1992); *Breines v. Pro*

*Custom Solar LLC*, No. 3:19-CV-353-J-39PDB, 2019 WL 7423522, at \*3 (M.D. Fla. Aug. 22, 2019) ("In the TCPA context, a motion to bifurcate individual and class discovery is not unheard of, with varied results largely based on educated guesses about future unknowns."). In fact, this court has previously granted bifurcated discovery in TCPA cases, recognizing the efficiency of resolving individual claims before proceeding to class-wide discovery. *See Leschinsky v. Inter-Cont'l Hotels Corp.*, No. 8:15-CV 1470-T-30MAP, 2015 WL 6150888, at \*2 (M.D. Fla. Oct. 15, 2015).

Defendants have taken the position that Plaintiff cannot state a claim under the TCPA because, *inter alia*, there was only one call made to Plaintiff. This is significant because the TCPA claim is the only alleged basis for this Court's federal question jurisdiction. According to the First Amended Complaint, a violation of 47 C.F.R. § 64.1200(d) is actionable through 47 USC § 227(c)(5), which grants a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of § 64.1200(d)." (Doc. 31 at ¶ 72). The First Amended Complaint alleges that Defendants initiated, or caused to be initiated on its behalf, more than one telephone solicitation in a 12-month period to Plaintiff and the Class members without instituting the "minimum standards" for "procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." (Doc. 31 at ¶ 72).

Because there is a real possibility that Plaintiff does not have an individual federal claim (which would raise questions about the Court's subject matter jurisdiction), and any prejudice to Plaintiff from a brief delay will be minimal, I conclude it is appropriate to limit discovery at this stage to Plaintiff's individual claims.

However, with that said, the record suggests that Defendants have failed to comply with their discovery obligations. Indeed, other than defense counsel providing some unverified information, Defendants have not supplemented their deficient discovery responses related to Plaintiff's individual claims. And, a review of the email correspondence discussed above shows that defense counsel failed to follow through on various agreements to produce additional records.

Moreover, Plaintiff's counsel has raised legitimate concerns about the recently produced CRM document that purports to reflect a search of Czar call records from June 2021 through July 2026. Indeed, a side-by-side comparison of the recent CRM search printout with the Original Search printout—both of which show one outbound call by Czar to Plaintiff—inexplicably appears to be substantially identical in nearly every respect, including, among other things, the same date (December 26, 2024), time (2:24 PM), and weather widget (57° Partly sunny). (Doc. 48-1 at 157-58). The only readily apparent differences appear to be the date-range fields and the removal of the record-count line. However, the date digits in the recent CRM search printout are in a different typeface than the surrounding interface text, with each numeral "1" bearing a horizontal base serif not present elsewhere in the interface.

Plaintiff's counsel raised these issues by email with defense counsel and sought clarification as to how the document was generated. (Doc. 48-1 at 75-76). In response, defense counsel minimized Plaintiff's legitimate concerns and made no efforts to substantively address them. And now, in response to the instant motion, defense counsel again minimizes these concerns claiming that the issues can be addressed by producing "native exports or sworn declarations describing parameters, system time-stamps, export tools, and audit logs" and that Defendants are able and willing to provide a sworn declaration from a "knowledgeable

custodian describing the system, search parameters, export procedures, and audit logs."( Doc. 56 at 5).

Given the inexplicable similarities between the recent CRM search printout and the Original Search printout, and Defendants' failure to offer a satisfactory explanation, the Court will conduct an evidentiary hearing regarding the completeness of Defendants' dialer-record production. **The in-person hearing will be conducted before the undersigned in Courtroom 1A in the Ocala Courthouse on August 24, 2026, at 10:00 a.m**. At the hearing, Defendants shall be prepared to produce in real-time, full and complete unfiltered CRM search results from each Defendant showing all inbound and outbound calls to and from Plaintiff for the full four-year period preceding the filing of the Complaint, with the date restrictions and the single-phone-number filter visible to confirm that the search captures all telephone numbers Defendants used to place calls. This should resolve the motion to compel regarding discovery requests for call detail records as to Plaintiff's individual claims.

In addition, consistent with counsel's agreements as shown in the emails discussed above (see e.g., Doc. 48-1 at 164), within **fourteen days** of this Order, Defendants shall:

1. Provide full and complete responses to Requests to Produce Nos. 15 and 16 regarding Defendants' compliance policies. Defendants are not required to provide the internal do-not-call list at this stage of discovery (Request to Produce No. 6);

2. Provide full and complete responses to Interrogatories Nos. 5, 6, and 7 and Requests to Produce Nos. 8, 9, 10, 11, and 12) relating to the inter-defendant contracts and vendor communications;

3. Provide full and complete responses to Request No. 14 relating to indemnification agreements; and

4.   For any interrogatory or response to produce to which Defendants responded that they "will supplement," they shall now provide full and complete supplementation.

After receiving the above discovery materials, if appropriate, Plaintiff may file a motion to pursue class-wide discovery. As noted above, the issue as to whether Plaintiff has individual claims has also been teed up in Defendants' early motion for summary judgment. Because Plaintiff has been somewhat stymied in his discovery efforts, the Court will afford Plaintiff an opportunity to file a supplemental response to the motion for summary judgment within **forty-five days** of the evidentiary hearing**.** Likewise, Plaintiff's motion to modify the scheduling order (Doc. 49) is due to be granted. The class certification deadline is hereby extended until **October 27, 2026.**

Finally, Spinnaker Resorts, Inc.'s motion to quash the subpoena and for a protective order (Doc. 51) is due to be **denied**. First, Spinnaker Resorts, Inc., is no longer a party to this action, having been dismissed upon the filing of the First Amended Complaint. Moreover, the non-party is challenging Notices of Taking Deposition Duces Tecum which were served upon Shawn W. Oliver, Robin Mason, and Jodi Kovalski, two of whom are officers and/or managing agents of a different defendant–Czar Marketing Group, LLC.[2]

Accordingly, the depositions of Shawn W. Oliver, Robin Mason, and Jodi Kovalski may proceed as scheduled. Plaintiff may not elicit testimony related to any class claims. Plaintiff may recall these witnesses at a later stage if appropriate.

---

[2] In support of its motion for summary judgment, Defendants offered the declaration of Jodi Kovalsky, who states she is "Vice President of Operations" of Czar Marketing Group, LLC. (Doc. 42-5 at ¶1). According to Plaintiff's counsel, Robin Mason offered a similar declaration in pre-suit discussions and identified as "Vice President of Operations" of Czar Marketing Group, LLC. (Doc. 54 at n.2).

DONE and ORDERED in Ocala, Florida on August 11, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge


Copies furnished to
Counsel of Record
Unrepresented Party